*********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the Parties at the hearing as:
 STIPULATION
1. The parties stipulated into evidence as Stipulated Exhibit 1 the following documents: (A) all Industrial Commission forms; (B) Plaintiff's responses to Defendants' First Set of Interrogatories; (C) all of Plaintiff's medical records; (D) Plaintiff's recorded claims *Page 2 
statement; (E) Incident Report form for Raleigh Garden Apartments; (F) email correspondence dated December 9, 2005 from Raleigh Garden Apartments to Sandy Loughran; (G) child support documents and Affidavits; and (H) Plaintiff's wage records.
 ***********
Based upon all of the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on December 13, 1967. He graduated from high school and has taken some college courses. His employment history includes work in product assembly, detailing, a warehouse, refereeing and coaching.
2. On December 16, 2005, Plaintiff was employed by Defendant-Employer, Ablest Corporation, a temporary staffing agency, and was working through Ablest at the Raleigh Garden Apartments in Raleigh, North Carolina.
3. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act as Defendant-Employer had three or more employees on the date of the alleged incident.
4. The carrier on the risk for Defendant-Employer is Zurich American Insurance Company.
5. At the time of the alleged incident, Plaintiff's average weekly wage was $254.23, resulting in a weekly compensation rate of $169.48.
6. Ablest Service Corporation ("Ablest") is a temporary staffing agency, which specializes in providing workers to its clients, one of whom was Raleigh Garden Apartments. *Page 3 
7. Plaintiff had been referred to Ablest by the "Working for Kids" program, which assists individuals who are behind in child support in finding gainful employment. Upon being referred to Ablest, Plaintiff informed Sandy Loughran, the personnel manager for Ablest, that he had prior experience working in maintenance. Ms. Loughran informed the Plaintiff that a maintenance position had recently become available at the Raleigh Garden Apartments, and that she was going to try and place Plaintiff in that position.
8. Ultimately, Ms. Loughran informed Plaintiff that she had been successful in her endeavors and that he was to begin working in the maintenance department at the Raleigh Garden Apartments in the near future.
9. On or about December 1, 2005, Plaintiff began working in the maintenance department at the Raleigh Garden Apartments. His duties as a maintenance person included assisting the maintenance technicians at the Raleigh Garden Apartments with plumbing, general maintenance, cleanup, and preparing rental units for new tenants. While working at the Raleigh Garden Apartments, Plaintiff was supervised by Gonzo Diaz, the maintenance supervisor.
10. After Plaintiff began working at the Raleigh Garden Apartments, the apartment manager, Sharon Murphy, became dissatisfied with Plaintiff's quality of work.
11. On December 9, 2005, Sharon Murphy sent an email to Sandy Loughran at Ablest in which she explained that Plaintiff's work quality was unsatisfactory.
12. Plaintiff continued to work at the Raleigh Garden Apartments after December 9, 2005. However, during this time, Plaintiff's work continued to be unsatisfactory to Ms. Murphy.
13. On December 16, 2005, Plaintiff reported for work at the Raleigh Garden Apartments at approximately 8:30 a.m. His duties that day involved preparing and cleaning an apartment unit that was going to be rented to a new tenant. When Plaintiff arrived at work on *Page 4 
December 16, 2005, he sat in the shop for a few minutes, reviewed the day's activities with his fellow employees, and policed the grounds. Within an hour or two of arriving at work, Plaintiff began working on his assignments. Plaintiff worked on cleaning out the apartment until approximately 12:00 p.m. when he took his lunch break.
14. Ms. Murphy and Gonzo Diaz both testified that the apartment wherein Plaintiff was working on December 16, 2005 had no large items in it other than a refrigerator and a stove. They further testified that the apartment did not contain a mattress or box spring.
15. On the morning of December 16, 2005, Sharon Murphy telephoned Sandy Loughran at Ablest and informed her that Plaintiff's services were no longer needed. Ms. Murphy requested that Ms. Loughran instruct the Plaintiff that his services were no longer needed as of December 16, 2005, and that he was not to return to the Raleigh Garden Apartments after picking up his check at Ablest at lunch that day.
16. While on his lunch break, Plaintiff traveled to the Ablest office to pick up his weekly paycheck. While at the Ablest office, Plaintiff was informed by Sandy Loughran that his services at the Raleigh Garden Apartments were being terminated immediately, and that he was not to return to the Raleigh Garden Apartments that day.
17. Plaintiff expressed displeasure with the decision, left the Ablest office, and returned to the apartment complex between 1:00 p.m. and 2:00 p.m. After arriving at the apartment complex, Plaintiff confronted Gonzo Diaz and accused Mr. Diaz of causing Plaintiff's termination. Plaintiff challenged Mr. Diaz to engage in a physical altercation, which Mr. Diaz refused.
18. Although conflicting evidence has been offered, the Full Commission finds that during this time, Sharon Murphy called the police and instructed the Plaintiff to leave the *Page 5 
premises immediately. Ms. Murphy further testified that at approximately 2:00 p.m. she saw Plaintiff getting on a bus and leaving the Raleigh Garden Apartments.
19. In his recorded statement, Plaintiff stated that he felt pain in his back as he was about to throw a mattress into a dumpster.
20. At the hearing, Plaintiff initially testified that he hurt his back between 1:45 and 2:30 p.m. as he was pulling a mattress through the door of an apartment unit. Plaintiff testified that as he was taking the mattress out of the door, he felt a sharp pain going up his back.
21. At another point during the hearing, Plaintiff testified that he hurt himself somewhere between the dumpster located approximately 60 yards from the apartment where he was working and the door of the apartment unit.
22. Plaintiff also gave conflicting testimony regarding what he was carrying at the time of the alleged incident. In response to Defendants' First Set of Interrogatories and Request for Production of Documents, Plaintiff stated that he hurt himself while carrying a mattress. At the hearing, Plaintiff initially testified that he hurt himself while carrying a mattress. However, he later stated that he believed he was pulling a box-spring at the time of the alleged incident, although he was not sure whether it was a double bed, queen size, or king size.
23. Plaintiff testified that he informed Sharon Murphy at Raleigh Garden Apartments about the alleged incident on the afternoon of December 16, 2005. Ms. Murphy testified that Plaintiff never reported an injury to her on December 16, 2005.
24. Gonzo Diaz and Sandy Loughran also testified that Plaintiff did not report any incident to either one of them on December 16, 2005.
25. The Full Commission finds the testimony of Sharon Murphy and Gonzo Diaz, both of whom are disinterested witnesses as their employer is not a part of this action, to be *Page 6 
credible. Furthermore, the Full Commission finds the testimony of Sandy Loughran of Ablest to be credible.
26. Based upon the greater weight of the competent and credible evidence of record in this matter, the Full Commission finds that Plaintiff did not sustain a compensable injury by accident on December 16, 2005.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to carry his burden of proving that he sustained a compensable injury by accident on December 16, 2005. N.C. Gen. Stat. § 97-2(6); Smith v. Dacotah Cotton Mills, Inc.,31 N.C. App. 687, 690, 230 S.E.2d 772, 774 (1976).
2. Plaintiff did not sustain a compensable injury by accident on December 16, 2005. N.C. Gen. Stat. § 97-2(6); Smith v. Dacotah CottonMills, Inc., 31 N.C. App. 687, 690, 230 S.E.2d 772, 774 (1976).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' Compensation benefits is hereby DENIED.
2. Defendants shall bear the cost.
3. Defendants' Motion to Dismiss Plaintiff's Appeal is denied as Plaintiff did file a Form 44 application for review which arguably indicates he is challenging the Opinion and Award of the Deputy Commissioner. *Page 7 
This the ___ day of November 2008.
 S/___________________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER